

**IT IS ORDERED as set forth below:**

**Date: September 17, 2019**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | |
| McArthur Jackson and Dorothy Ann Jackson, | CASE NO. 15-55379-BEM |
| Debtors. | |
| | CHAPTER 7 |
| Jason L. Pettie, | |
| Plaintiff, | |
| v. | ADVERSARY PROCEEDING NO. 18-5064-BEM |
| RBC Mortgage Company, Nationstar Mortgage LLC, and Citibank, Federal Savings Bank, | |
| Defendants. | |

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This proceeding comes before the Court on RBC Mortgage Company's ("RBC")

Motion for Summary Judgment filed November 19, 2018 (the "Motion") [Doc. 9]. For the

reasons below, the Court will grant the Motion.

## I.   <u>PROCEDURAL HISTORY</u>

Jason L. Pettie, Chapter 7 Trustee ("Plaintiff" or the "Trustee") for the estate of McArthur Jackson and Dorothy Ann Jackson ("Debtors"), commenced this adversary proceeding on March 23, 2018 with his *Complaint to Determine the Validity, Priority, and Extent of Liens and Interests* (the "Complaint") [Doc. 1]. In the Complaint, Plaintiff seeks, among other relief, a determination from the Court that Dorothy Ann Jackson's ("Debtor Wife") undivided interest in certain real property is free and clear of three encumbrances, one of which is a security deed held by RBC. [Doc. 1 at 6 ¶ 39]. Plaintiff asks the Court to enter an order "conclusively establishing the validity, extent and priority of Defendants' interests in the Property . . . and declaring the RBC Security Deed does not attach to Mrs. Jackson's undivided one-half interest in the Property[.]" [*Id.* at 7].

On November 19, 2018, RBC moved for summary judgment on Plaintiff's claims against RBC. [Doc. 9]. Oral argument was held on the Motion on February 5, 2019. On June 22, 2019, the Court issued an Order and Notice advising the parties that the Court intended to take judicial notice of the Schedules filed by Debtors in the main bankruptcy case and providing the parties an opportunity to object to the Court's taking judicial notice (the "Notice"). [Doc. 22] Neither Plaintiff nor Defendant objected. [Docs. 24, 26].  After the Notice, both RBC and the Trustee filed supplemental briefs. [Docs. 24, 26, and 27] In addition, RBC filed a motion requesting oral argument (the "Request for Oral Argument"). [Doc. 25]. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

## II.   <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is governed by Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56, which provides that the "court shall grant summary judgment if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the nonmoving party. *Id.*

The moving party has the burden of establishing its entitlement to summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party must identify the pleadings, discovery materials, or affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings to defeat summary judgment. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2510 (citations omitted). Rather, the nonmoving party must present specific facts supported by evidence that demonstrate there is a genuine material dispute. *Id.*

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, … or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Material facts contained in the moving party's statement of material facts that are not specifically controverted by the nonmoving party will be deemed admitted. Bankr. L. R. N.D. Ga. 7056-1(a)(2).

### III.  FACTS

RBC filed its statement of material facts (the "SOMF") [Doc. 11] and Plaintiff, with the reservation that it was admitting certain statements with respect to the deeds at issue in this proceeding to the extent not inconsistent with the documents, admitted each of the

3

statements of material fact. [Docs. 14, 21]. RBC admitted some of the allegations in its answer to the Complaint, [Doc. 8] and these facts are undisputed.

Debtor McArthur Jackson ("Debtor Husband") acquired title to real property located at 3914 Box Wood Walk, Ellenwood, Georgia (the "Property") pursuant to a warranty deed dated December 15, 2004, in consideration of the purchase price of $339,900.00 (the "Warranty Deed"). [Doc. 8 at 3 ¶ 9]. The Warranty Deed was filed and recorded on the real property records with the clerk of the Superior Court of DeKalb County, Georgia at Deed Book 16957, Page 183 and bearing a recording date of December 30, 2004 at 12:10 pm. [*Id.*]

On December 16, 2004, Debtor Husband executed a security deed encumbering the Property in favor of RBC (the "Security Deed"). [Doc. 11 ¶ 1; Doc. 14 at 2]. In the Security Deed, Debtor Husband covenanted that he "is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrance of record." [Doc. 11 ¶ 5; Doc. 1 at 15].[1] In the Security Deed, Debtor Husband did not limit the conveyance of the Property in any way nor did he reserve or exclude any interest in the Property in favor of Debtor Wife. [Doc. 11 ¶ 6; Doc. 1 at 11].[2] Debtor Husband granted the Security Deed to RBC in consideration of the purchase money loan recited therein. [Doc. 11 at 1 ¶ 4; Doc. 21 at 2]. Debtor Husband executed the Security Deed at the law offices of Harger W. Hoyt, P.C. [Doc. 11 ¶ 2; Doc. 21]. Debtor Husband delivered the Security Deed to the lawyer for RBC at the law offices of Harger W.

---

[1] *See also* Doc. 14 at 3 (same, but with reservation that this is admitted "to the extent it is consistent with the language of the RBC Security Deed").

[2] *See also* Doc. 14 at 3 (same, but with reservation that this is admitted "to the extent it is consistent with the language of the RBC Security Deed").

4

Hoyt, P.C. on December 16, 2004. [Doc. 11 ¶ 3; Doc. 21 at 2]. Debtor Wife is not expressly named as a party to the Security Deed. [Doc. 1 ¶ 17; Doc. 8 ¶ 17].

Also on December 16, 2004, Debtor Husband executed a "Joint Tenancy with Survivorship Warranty Deed" (the "Gift Deed" and with the Security Deed, the "Deeds") in favor of Debtor Wife, wherein Debtor Husband stated that "the purpose of this deed is to convey a one-half interest to my spouse with love and affection." [Doc. 11 at 2 ¶ 7; Doc. 14 at 3]. The only consideration expressly identified in the Gift Deed is: **"LOVE AND AFFECTION."** [Doc. 11 at 3 ¶ 9; Doc. 14 at 4] (emphasis in the original). Debtor Husband executed the Gift Deed at the law office of Harger W. Hoyt, P.C. [Doc. 11 at 2 ¶ 7; Doc. 21 at 2].

Like the Warranty Deed, the Security Deed and the Gift Deed were both recorded at 12:10 p.m., December 30, 2004. [Doc. 11 at 3 ¶ 10; Doc. 14 at 4]. As noted above, the Warranty Deed was recorded at page 183 in the county deed book. The Gift Deed received a page number of 184 in the county deed book, and the Security Deed received a page number of 185 in the same deed book. [Doc. 11 at 3 ¶ 11; Doc. 14 at 4].

## IV.   ANALYSIS

Section 544(a)(3) of the Bankruptcy Code gives the Trustee the "rights and powers" of a bona fide purchaser of real property and the power to avoid any transfers such a bona fide purchaser could avoid.[3] Section 544 "does not give the trustee any greater rights than he, or any other person, would have as a bona fide purchaser or creditor under applicable state law. . . ." *In re Henderson*, 284 B.R. 515, 519 (Bankr. N.D. Ga. 2002) (Mullins, J.) (quoting *Maine Nat'l Bank v. Morse (In re Morse)*, 30 B.R. 52, 54 (B.A.P. 1st Cir. 1983)); *c.f. In re*

---

[3] 11 U.S.C. § 544(a)(3) states in relevant part: "[t]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee … the rights and powers of, or may avoid any transfer of property of the debtor, … that is voidable by – (3) a bona fide purchaser of real property, … from the debtor, against whom applicable law permits such transfer to be perfected, that obtains that status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such purchaser exists."

*Hagendorfer*, 803 F.2d 647, 650 (11th Cir. 1986) (stating that § 544 does not give a trustee "rights greater than those possessed by the debtors and unsecured creditors of the debtors"). State law governs who may be a bona fide purchaser and the rights of such a purchaser. *In re Hagendorfer*, 803 F.2d at 649 (interpreting Alabama state law). Therefore, the issue in this proceeding is one of Georgia law.

"To qualify as a bona fide purchaser for value without notice, a party must have neither actual nor constructive notice of the matter at issue." *Stearns Bank, N.A. v. Rent-a-Tent, Inc. (In re Rent A Tent, Inc.)*, 468 B.R. 442, 456 (Bankr. N.D. Ga. 2012) (Drake, J.) (quoting *Virginia Highland Civic Ass'n, Inc. v. Paces Properties, Inc.*, 250 Ga. App. 72, 550 S.E.2d 128 (2001) (internal citations omitted)). "Under Georgia law, '[a] purchaser of land is charged with constructive notice of the contents of a recorded instrument within its chain of title.' Conversely, a document recorded outside the chain of title does not impact constructive notice." *Id.* (quoting *Va. Highland Civic Ass'n*, 250 Ga. App. at 74). "Chain of title includes all recorded instruments pertaining to the property that are executed by an entity holding a recorded interest in the property at the time of the execution of the instrument." *Id.* at 457 (citing *Suntrust Bank v. Equity Bank, S.S.B.*, 312 Ga. App. 644, 719 S.E.2d 539 (2011) (internal citations omitted)).

Included in the concept of constructive notice is the duty to inquire, codified in O.C.G.A. § 23–1–17, which states in relevant part, "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led." Accordingly,

> when information appears in the county's records or occurs during the sale of real property that would excite a reasonable purchaser's attention regarding the existence of a lien or other issue affecting the title to the property, the purchaser has a duty to make a further inquiry. The notice which is sufficient to create this duty to inquire is also constructive notice of 'everything to which it is afterwards found that such inquiry might have led.'

6

*Gallagher v. Buckhead Cmty. Bank*, 299 Ga. App. 622, 626, 683 S.E.2d 50, 54 (2009) (citation omitted) (quoting O.C.G.A. § 23–1–17). *See also Hamilton State Bank v. Kelly Capital Invs., LLC*, 335 Ga. App. 252, 260, 779 S.E.2d 757, 764 (2015) ("And, 'any circumstance which would place a man of ordinary prudence fully upon his guard, and induce serious inquiry, is sufficient to constitute' actual or constructive notice.") (quoting *Montgomery v. Barrow*, 286 Ga. 896, 897, 692 S.E.2d 351, 352 (2010)); *Detention Mgmt., LLC v. UMB Bank, N.A. (In re Mun. Corr. LLC)*, 501 B.R. 119, 132–33 (Bankr. N.D. Ga. 2013) (Bonapfel, J.) ("If the duty to inquire is triggered, a purchaser is deemed to have notice of everything that an inquiry would have uncovered. If a subsequent purchaser does not make an inquiry or explain why the inquiry would have been futile, 'it will be presumed that due inquiry would have disclosed the existent facts.'") (citation omitted) (quoting *Henson v. Bridges,* 218 Ga. 6, 10, 126 S.E.2d 226, 228 (1962)); *see also Hagler v. U.S. Bank (In re Hagler)*, 429 B.R. 42, 53 (Bankr. N.D. Ga. 2009).[4]

"Section 544 of the Bankruptcy Code, the 'strong arm' clause, does not set aside the Trustee's duty . . . to examine the record of title." *In re Hagendorfer*, 803 F.2d at 649. As a result of this,

> [b]efore exercising the rights and powers of a hypothetical bona fide purchaser, Trustee is obligated to take note of those same circumstances prevailing at the time … that a hypothetical purchaser of Debtor's real property would be obligated to take note of … *If a hypothetical purchaser of Debtor's real property should have taken note of a superior interest existing in the Debtor's real property, then the prospective purchaser could not have become a bona fide purchaser.* It follows that if circumstances would prevent any hypothetical purchaser from taking Debtor's property in good faith and without notice then there exist no "shoes" of a hypothetical bona fide purchaser at the time of the commencement of the case for Trustee to step into.

---

[4] RBC asserts that "*Hagler* . . . does not apply. That case concerned a Trustee's ability to avoid an improperly recorded security deed. 429 B.R 42 (Bankr. N.D. Ga. 2009). In this case, however, the Trustee does not challenge the proper recordation of the RBC Security Deed." [Doc. 17 at 1]. That the Trustee does not seek to avoid an interest in this proceeding does not change the principle for which the Court cites *Hagler*. Further, in order to determine the priority of liens the Court must consider whether there is constructive notice of RBC's asserted interest in the Property.

*In re Henderson*, 284 B.R. at 517 (quoting *Flatau v. Madonian (In re Sheetex, Inc)*, 1999 Bankr.

LEXIS 1189 at *17 (Bankr. M.D.Ga. 1999) (citing 5 Collier on Bankruptcy 544.08 (edition not

provided)) (emphasis in *Henderson*).  In addition, the hypothetical purchaser is deemed to have

performed a title search. *In re Mun. Corr., LLC*, 501 B.R. at 138 (citing *In re Hedrick,* 524 F.3d

1175, 1181 (11th Cir. 2008)).

Georgia is a "race-notice" state. O.C.G.A. § 44-2-1, Georgia's race-notice statute,

provides:

> Every deed conveying lands shall be recorded in the office of the clerk of the
> superior court of the county where the land is located. A deed may be recorded at
> any time; but a prior unrecorded deed loses its priority over a subsequent recorded
> deed from the *same vendor* when the purchaser takes such deed without notice of
> the existence of the prior deed.

O.C.G.A. § 44-2-1 (emphasis added). The use of the word "vendor" in this statute indicates it

only applies to priority disputes between holders of deeds for value. *See Toole v. Toole*, 107

Ga. 472, 472, 33 S.E. 686, 687 (1899). Thus, under § 44-2-1, when the same grantor gives two

deeds for value, the deed executed second will take priority over the first deed if the second

deed is recorded prior to the first deed and the holder of the second deed has no notice of the

first deed. This illustrates there are two key dates in a priority dispute: the date the deed was

executed and the date it was recorded.

In priority contests other than those involving two deeds for value, O.C.G.A. §

44-2-2(b) sets forth the rule as follows:

> Deeds, mortgages, and liens of all kinds which are required by law to be recorded
> in the office of the clerk of superior court and which are against the interests of
> third parties who have acquired a transfer or lien binding the same property and
> who are acting in good faith and without notice shall take effect only from the
> time they are filed for record in the clerk's office.

O.C.G.A. § 44-2-2(b). In other words, a deed or lien against particular real property must be recorded to be effective against a good-faith deed holder without knowledge, regardless of the order of execution or other means of acquisition. By its terms, the statute applies to "[d]eeds ... of all kinds which are required by law to be recorded[.]" Under § 44-2-1, all deeds to real property must be recorded. Thus, § 44-2-2(b) would seem to apply to voluntary deeds, which are deeds given for good consideration, such as love and affection, rather than valuable consideration.[5] However, under O.C.G.A. § 44-2-3, a voluntary deed will only take priority over a subsequent deed if the voluntary deed is both executed and recorded prior to execution of the subsequent deed:

> Every unrecorded voluntary deed or conveyance of land made by any person shall be void as against subsequent bona fide purchasers for value without notice of such voluntary deed or conveyance; provided, however, that, if the voluntary deed or conveyance is recorded in accordance with Code Section 44-2-1, it shall have priority over subsequent deeds or conveyances to the described land.

O.C.G.A. § 44-2-3. As demonstrated by the case law, an unrecorded deed for value takes priority over a later-executed voluntary deed that is recorded even if the voluntary deed holder has no notice of the deed for value. *Bagwell v. Henson*, 124 Ga. App. 92, 95, 183 S.E.2d 485, 488 (1971) ("in a contest between a prior unrecorded instrument based on a valuable consideration and a subsequent [recorded] voluntary conveyance, even in the absence of notice, the prior [unrecorded] instrument prevails"); *accord Langdale Co. v. Day*, 119 Ga. App. 210, 211, 166 S.E.2d 646, 647 (1969) (prior unrecorded timber lease took priority over subsequent recorded voluntary deed without notice of the timber lease); *Minor v. Georgia Kraft Co.*, 219 Ga. 434, 434, 134 S.E.2d 19, 19-20 (1963).

---

[5] A voluntary deed is one that is given without valuable consideration--for love and affection. Hinkel, Daniel F., PINDAR'S GA. REAL ESTATE L. & PROC. § 19:8 (2019); *see, e.g., Dunn v. Evans*, 139 Ga. 741, 78 S.E. 122 (1913) (deed from mother to daughter was based on good consideration and could not be set aside for lack of consideration).

Here, the Court must consider the competing priorities of a voluntary deed (the Gift Deed), a deed based on valuable consideration (the RBC Security Deed), and a hypothetical bona fide purchaser (the Trustee).

### A. Contentions of the Parties

RBC argues that the Trustee seeks to replace the intentions of the parties to the Deeds and the vesting of the interests conveyed based solely on the page numbers affixed to the Deeds by the clerk of the Superior Court. This fails as a matter of law, according to RBC, because it is filing the document with the clerk that determines priority, not the page numbers assigned by the clerk, and further, voluntary deeds are disfavored in the law such that even an unrecorded prior deed for valuable consideration is superior to a recorded voluntary deed. RBC also argues that the Trustee cannot prevail because all parties to the Deeds had actual knowledge of each of the Deeds.

In response, the Trustee argues that because he has the status of a hypothetical bona fide purchaser who does not have actual knowledge of the transaction and because the real estate records would not require him to inquire into the transactions between Debtor Husband and RBC and between the Debtors, the Trustee takes free of any interest RBC has in Debtor Wife's interest in the Property. The Court will now consider each of these arguments.

The first question is whether the RBC Security Deed ever attached to the Debtor Wife's interest in the Property, such that it would be enforceable against her interest regardless of the bankruptcy or the existence of a hypothetical bona fide purchaser. The undisputed facts indicate that the Security Deed and the Gift Deed were executed on the same date and at the same location, were recorded at the same time, and Debtor Husband and RBC are the only parties to the Security Deed. The undisputed facts further establish that (i) in the Security Deed

Debtor Husband covenanted that "he is lawfully seised of the estate herby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrance of record," (ii) Debtor Husband did not limit the conveyance of the Property in any way, nor did he reserve or exclude any interest in the Property in favor of Debtor Wife, and (iii) Debtor Husband granted the Security Deed in consideration of the purchase money loan recited therein. Further, the description in each of these deeds is identical, thus the Warranty Deed and the Security Deed support a conclusion that the entire interest Debtor Husband received when he purchased the Property is subject to the Security Deed.[6]

Analysis of the provisions of the Security Deed is appropriate because deeds are contracts that are subject to the usual rules of construction for contracts and subject to "the cardinal rule of contract construction … to ascertain the intention of the parties, as set out in the language of the contract." *Clark v. AgGeorgia Farm Credit ACA*, 333 Ga. App. 73, 75-76, 775 S.E.2d 557, 560 (2015) (citation omitted). Construction of an "unambiguous deed, like the construction of any other contract is a question for determination by the court." *Id.* at 75, 775 S.E.2d at 560 (quotation marks and citations omitted).

The undisputed facts establish the intention of the parties to the Deeds to obtain the funds to purchase the Property, to secure the loan with the entire Property and then to convey a one-half interest to Debtor Wife.  However, in an effort to determine if additional facts of the

---

[6] Paragraph 16 of the Complaint states "[a] true and correct copy of the RBC Security Deed … and is incorporated by reference."  RBC admitted this allegation. The Complaint, at paragraph 10, also states "A true and correct copy of the Warranty Deed is attached … and incorporated by reference."  This paragraph was admitted by RBC.

parties' intentions were of record the Court sought to review the Schedules filed by the Debtors. To allow that review, the Court issued the Notice. The Court has now reviewed the Schedules filed in the Debtors' main bankruptcy case, which show the following: (1) the Property is listed on Schedule A as jointly owned by Debtor Husband and Debtor Wife; (2) no exemption for the Property was taken by either Debtor Husband or Debtor Wife in Schedule C; (3) the debt owed to RBC is listed on Schedule D as a "First Mortgage On Primary Residence"; and (4) the debt owed to RBC is listed on Schedule D as a joint debt. [Case 15-55379, Doc. 1 at 13, 19].

RBC argues that, if Debtor Husband had intended for Debtor Wife to hold a one-half interest in the Property free and clear of the RBC Security Deed, then the Schedules would have been drafted differently. [Doc. 24]. For example, Schedule C should have included a homestead exemption for Debtor Wife and Schedule D should have reflected one-half of the property value held individually by Debtor Wife.

In contrast, the Trustee argues that the Schedules indicate that Debtors were confused because neither party has alleged Debtor Wife was a co-borrower on the RBC loan, but this debt is listed as joint. [Doc. 26 at 2]. Additionally, the Trustee asserts that because a later loan modification was executed solely by Debtor Husband, the Debtors must have intended for Debtor Wife's interest to remain unencumbered. [*Id.*] RBC responded to this allegation, stating that because Debtor Wife was never a party to the original Security Deed, she did not need to sign the loan modification. RBC alleges that this is evidence that the Debtors intended for her gifted one-half interest to be subordinate to the original Security Deed and to the modification. [Doc. 27 at 1].

The undisputed facts show that Debtor Wife is not a party to the Security Deed, nor has any party alleged that she is a co-borrower on the RBC loan. However, the scheduling of

the debt secured by the Property as joint is merely additional support that the parties intended that the entire Property be subject to the Security Deed. It is also undisputed that Debtor Wife did not take an exemption in the Property. If the intent was for her interest to be free of the Security Deed, she would be entitled to an exemption, and the value of the Property listed in Schedule D would have been limited to one-half of the value of the Property. Nowhere in the Schedules did the Debtors reflect that a one-half interest in the Property was owned free of the Security Deed.

### B.    Priority of Gift Deeds

Having determined that the entire Property is subject to RBC's Security Deed, the Court now considers whether the Trustee, as a bona fide purchaser for value, would take the Property free of the Security Deed as to Debtor Wife's interest in the Property.[7] The Trustee stands in the shoes of a hypothetical bona fide purchaser for value without actual knowledge of the Security Deed. 11 U.S.C. § 544(a)(3). Because the Trustee is not charged with actual notice of the Security Deed, the question remains whether the recording of the Security Deed and/or the Gift Deed provided constructive notice to the Trustee of RBC's interest in the Property. If the filing of the Security Deed and/or the Gift Deed did not provide constructive notice then, notwithstanding the parties' intentions, such a purchaser for value is without notice and takes free of the interest in property.[8] O.C.G.A. § 44-2-1.

RBC argues that constructive notice is not relevant to this case because voluntary deeds have priority over deeds for value only when the deed for value is subsequent to the

---

[7] The complaint does not raise an avoidance claim under 11 U.S.C. § 544, but does seek a determination of the extent, validity and priority of RBC's lien.  In order to determine the priorities the Court must consider constructive notice as the Trustee is given the rights and powers of a bona fide purchaser as of the petition date.

[8] Recording is synonymous with filing with the clerk. *Durrence v. Northern Nat. Bank of Philadelphia*, 117 Ga. 385, 43 S.E. 726 (1903); *Giordano v. Stubbs*, 228 Ga. 75, 79; 184 S.E.2d 156, 168 (1971) ("…it is the date of filing, and not the date of record, that fixes rights under the law with respect to instruments required to be recorded."); *Thomas v. Hudson*, 190 Ga. 622, 10 S.E.2d 396 (1940) (deed takes effect from time it is filed and the actual recording is clerk's duty which if erroneously performed will not defeat a grantee who properly filed its deed).

13

voluntary deed. RBC contends that because the Security Deed existed when the Gift Deed was recorded, the Security Deed cannot be a subsequent deed. According to RBC, because the Deeds were filed simultaneously[9], the Security Deed is either a prior unrecorded deed for value or a simultaneously filed deed for value, but not a subsequent deed for value and the Trustee cannot prevail as a matter of law.

In so arguing, RBC relies on *Bagwell* for the proposition that a prior unrecorded deed for value has priority over a recorded voluntary deed. 124 Ga. App. at 95, 183 S.E.2d at 488. In *Bagwell*, the question was which party was entitled to condemnation proceeds: the holder of a prior unrecorded option to purchase the property or the holder of a subsequent recorded voluntary deed without knowledge of the option. The court concluded the holder of the option had priority and the holder of the voluntary deed stood in the shoes of her grantor. Similar to *Bagwell*, this Court has already determined that Debtor Wife's interest is subject to RBC's Security Deed. However, unlike *Bagwell*, the Court has to determine the effect of a bona fide purchaser on that interest. Thus, the priority of the Security Deed versus the Gift Deed does not address the issue before the Court, that is, whether a bona fide purchaser would have notice of RBC's interest in the Property.

### C.    Notice

As a hypothetical bona fide purchaser, the Trustee is charged under Georgia law with constructive notice of the contents of all recorded instruments within the chain of title of the

---

[9] Other states have addressed the issue of simultaneous recording by turning to the intent of the parties. *See eg: First Bank v. East West Bank*, 199 Cal. App. 4th 1309, 132 Cal. Rptr. 3d 267 (2011) (holding that "…because both trust deeds were executed on the same day and are deemed recorded simultaneously, neither bank is a subsequent purchaser."); *MTC Financial v. Nationstar Mortgage, LLC*, 19 Cal. App. 5th 811, 228 Cal. Rptr. 3d 238 (2018) (holding that "[a]bsent evidence of timing that was determinative, the trial court here reasonably relied on the apparent intent of the parties to determine the priority of the two liens."); *Borrenpohl v. Dabeers Props. L.L.C*, 276 Neb. 426, 433, 755 N.W.2d 39, 44 (2008) (holding that "resolution of priority between simultaneously recorded documents is determined by reference to the intention of the parties.").

interest in property the hypothetical purchaser seeks to buy and, if the contents of the records or the circumstances of the sale require, all that inquiry would show.  If an instrument is outside the chain of title then it provides no constructive notice.  Thus, the Court must determine if the Security Deed is in the chain of title for Debtor Wife's interest in the Property or if the circumstances presented by the instruments of record would excite a reasonable purchaser's attention regarding the transactions between Debtor Husband and RBC and the Debtors thereby creating a duty to inquire.

In *VATACS Group, Inc. v. HomeSide Lending, Inc.,* the court determined that a subordination agreement in favor of defendant's later security deed was effective to subordinate the interests of the successor in interest to American General (the "plaintiffs") who held two earlier executed and recorded security deeds. 276 Ga. App. 386, 623 S.E.2d 534 (2005).  The court determined that the unambiguous language of the subordination agreement applied to both earlier deeds and, because the agreement was in the chain of title, plaintiffs were charged with notice of the subordination of their interests.  In so concluding, the court addressed plaintiffs' argument that the subordination agreement was outside the chain of title because it was recorded after the deeds through which plaintiffs claimed title and plaintiffs' reliance on the following proposition:

> A title examiner is obligated to run through the index of grantors until he finds a conveyance by the owner of the land in question.  After such conveyance, the former owner becomes a stranger to the title, and the examiner must follow down the name of the new owner to see if he has conveyed the land, and so on.  It would be a hardship to require an examiner to follow in the indexes of grantors the names of every person who at any time through perhaps a long chain of title was the owner of the land.

*Id.* at 540 (citing 3 Hinkel, Pindar's Real Estate Law & Procedure, § 26-5, p. 42, n.4 (6th ed. 2004). The court said plaintiffs' argument ignored "the basic concept that all instruments

executed and recorded by an interest holder . . . during the time [it] held its duly recorded interest are in the chain of title and are therefore constructive notice." *Id*. at 392, 623 S.E. 2d at 540. As a result, because American General held its interest in the property until after recordation of the agreement, Plaintiffs had notice of the subordination of their interest. *Id.*

In *McLeod v. Clements,* the issue was whether an earlier agreement to provide water from a well on an adjacent property free of charge was in the chain of title for the property containing the well (the "Well Property"). 326 Ga. App. 840, 755 S.E. 2d 346 (2014).  The two properties were originally owned by one individual, but at some point the Well Property was conveyed to defendant's predecessor in interest and the adjoining property was conveyed to plaintiff. The earlier agreement was executed in 1971 by the then owner of the Well Property. This agreement was not recorded until 1996 after the Well Property was conveyed by warranty deed. The warranty deed required that water be provided to the neighboring property but, contrary to the earlier agreement, provided for payment of "a reasonable monthly fee" for electricity and maintenance of the well. In concluding that the earlier agreement was not in the chain of title of the Well Property the court noted that, (i) the warranty deed did not reference the earlier agreement, (ii) the 1971 agreement was not recorded until after the warranty deed was recorded,  and (iii) a bona fide purchaser is "protected against outstanding interests in land of which the purchaser has no notice." *Id.* at 349. The court then noted that *VATACS* turned on the fact that the title holder both executed *and recorded* the subordination agreement during the time that it held title to the relevant property and because the 1971 agreement was not recorded until after its signatory had conveyed the Well Property to a third party without actual knowledge, the earlier agreement was outside the chain of title for the Well Property. 326 Ga. App. 840, 755

16

S.E.2d 346, 350 n.6 (emphasis in the original).  In so doing the court cited the Revised State Bar

of Georgia Title Standards (the "Standards") which state in relevant part:

> In examining a title, the examiner is required to search only for properly indexed
> and recorded instruments in the chain of title: For this purpose the following
> instrument is outside the chain of title: (A) An instrument from a person in the
> chain of title filed for record after the date of filing for record of another
> instrument from the same person purported to part with the same interest.

*Id.* at 350; *see also* REAL PROPERTY LAW SECTION, STATE BAR OF GEORGIA, REVISED TITLE

STANDARDS OF GEORGIA (2018), § 2.2.  This section goes on to state:

> (B) An instrument from a person in the chain of title recorded prior to the date of
> the deed conveying title into that person in the absence of other circumstances
> which point to the existence of the instrument.  The starting date for the search in
> the name of each new record title holder should be the date of the vesting
> instrument rather than the filing date.

REAL PROPERTY LAW SECTION, STATE BAR OF GEORGIA, REVISED TITLE STANDARDS OF

GEORGIA (2018), § 2.2[10]; *see also Lacy v. National Bank of Walton County*, 238 Ga. 520, 233

S.E.2d 775 (1977) (purchaser required to search from date of this grantor's deed). In addition,

the Standards provide that a search of record title for 50 years or more is sufficient to determine

marketability of title but does not prevent the parties involved from agreeing to a search of less

than 50 years. REVISED TITLE STANDARDS at § 2.1.

　　　　　With these guidelines in mind, the Court now turns to the records a title search

would reveal to the Trustee as hypothetical bona fide purchaser of the Debtor Wife's interest in

the Property. It is undisputed that Debtor Husband had an interest in the Property when he

executed both the Security Deed and the Gift Deed, but because of the simultaneous recordation

of the Warranty Deed and each of the Deeds, the undisputed facts do not establish whether

Debtor Husband held an interest as the sole owner or a co-owner at the time each of the Deeds

was recorded. The Standards counsel that the transfer of the same interest in property with a

---

[10] The Standards are instructive rather than controlling. *In re Mun. Corr., LLC,* 501 B.R. at 138.

recording date after that same interest has already been conveyed will cause the later recorded instrument to be outside the chain of title.  Here, Debtor Husband did not convey the same interest in the Property in two instruments. Rather, he granted a security interest in the entire property and legal title for the entire property under the Security Deed and conveyed an undivided one-half interest in the Property to Debtor Wife. Because the Warranty Deed was recorded at the same time as each of the Deeds it is not possible based upon the undisputed facts to determine if Debtor Husband held a recorded interest in the Property when each of the Deeds was recorded. Nevertheless, given the rule set forth in *Lacy* and the Standards for the period of the records search, it is imminently reasonable to require a bona fide purchaser to conduct a search of the records that would reveal the Warranty Deed executed just one day prior to the Gift Deed, that is the granting deed of the purchaser's grantor. At that point, the purchaser would see that Debtor Husband became the sole owner of the Property on December 15, 2004 and on December 16, 2004 he conveyed an undivided one-half interest to his wife. On that same day, the date of execution of the purchaser's grantor's vesting deed, the purchaser would also be charged with finding the duly recorded Security Deed because it was executed on the date of the Gift Deed and recorded on the same date at the same time as the granting deed.

Even if this were not the case, the Trustee has constructive notice of RBC's interest in the Property because of the circumstances evidenced by the recorded instruments. The undisputed facts establish that the loan from RBC was a purchase money loan that resulted in the Security Deed, that the Security Deed was granted at the same closing as the Gift Deed granting Debtor Wife a one-half interest in the Property and in a transaction in which the usual structure would grant the lender an interest in the entire property. In addition, the Deeds were simultaneously recorded and the interest conveyed is that of a co-owner. Based upon these

18

undisputed facts, the Court concludes that a man of ordinary prudence fully upon his guard when confronted with these circumstances must investigate the transactions between Debtor Husband and RBC and Debtor Wife.  Therefore, the undisputed facts establish that a bona fide purchaser for value would be on inquiry notice of the Security Deed and RBC's superior interest in the Property.  As a result, a bona fide purchaser would not take free of RBC's interest in the entire Property and neither can the Trustee.

The Trustee argues that his position as a bona fide purchaser is not affected by Debtor Husband's intent in executing the Security Deed and the Gift Deed. In support of this argument, the Trustee cites *In re Greiner*, a 2019 bankruptcy case concerning a security deed that was cancelled and removed from the property records, rendering the deed unrecorded. In *Greiner*, inquiry notice was not triggered because the trustee is not charged with actual notice given to anyone else, and constructive notice does not exist where there is no recorded deed. *Pettie v. Quicken Loans, Inc. (In re Greiner)*, No. 18-59660-PWB, AP No. 18-5208-PWB, 2019 WL 1282911, at *8 (Bankr. N.D. Ga. Mar. 18, 2019) (Bonapfel, J.). The parties dispute whether *Greiner* stands for the proposition that a bona fide purchaser is presumed *not* to be given correct information by others in the chain of title. [Doc. 26 at 2; Doc. 27 at 2]. To the extent the Trustee argues that this is the correct legal standard, the Court is persuaded by RBC's reading of the case as consistent with inquiry notice under Georgia law—that is, the imputation of knowledge of an earlier interest to a later purchaser of an interest in land whenever there is any circumstance which would place a man of ordinary prudence fully upon his guard, and induce serious inquiry.

As explained above, the Court has determined that Debtor Husband intended the RBC Security Deed to encumber the entire Property and that it does so encumber the Property. The Court has further determined that the Trustee had constructive notice of the Security Deed

and the undisputed facts of the parties' intention that the entire Property be subject to the Security Deed; thus, there are no disputes of material fact to preclude granting the Motion. Further, the Court does not believe additional oral argument will assist in its determination of the Motion. Accordingly, it is now, hereby

ORDERED that the Request for Oral Argument [Doc. 25] is DENIED. It is further

ORDERED that the Motion [Doc. 9] is GRANTED. It is further

ORDERED that the Court will enter a judgment pursuant to Fed. R. Bankr. P. 7054(b) to allow the immediate appeal of this order as it appears that this claim is determinative of the claims raised by the Trustee against the other defendants in this proceeding and thus, there is no just reason for delay in entry of a final judgment.

**END OF ORDER**

## **Distribution List**

Neil C. Gordon
Arnall Golden Gregory LLP
Suite 2100
171 17th Street, NW
Atlanta, GA 30363

William D. Matthews
Arnall Golden Gregory LLP
Suite 2100
171 17th Street, NW
Atlanta, GA 30363

Edward D. Burch
Smith, Gambrell & Russell, LLP
Ste 3100, Promenade II
1230 Peachtree Street, NE
Atlanta, GA 30309-3592

Brian P. Hall
Smith, Gambrell & Russell, LLP
Suite 3100, Promenade II
1230 Peachtree Street NE
Atlanta, GA 30309-3592

Jason L. Pettie, Chapter 7 Trustee
PO Box 17936
Atlanta, GA 30316